MICHAEL R. LESLIE (SBN 126820)
*mleslie@kslaw.com*
AMANDA FARFEL (SBN 288126)
*afarfel@kslaw.com*
KING & SPALDING LLP
633 West 5th Street, Suite 1600
Los Angeles, CA 90071
Telephone:   +1 213 443 4355
Facsimile:   +1 213 443 4310

Attorneys for Plaintiff
54 DYER LP

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 54 DYER LP, a Colorado Limited Partnership, <br><br> Plaintiff, <br><br> v. <br><br> ADAM AMBRUSO, Individually; ADAM AMBRUSO, as Trustee of the ADAM AMBRUSO REVOCABLE LIVING TRUST; ODIN GROUP, LLC; and DOES 1-10, inclusive, <br><br> Defendants. | Case No.: _____ <br><br> **VERIFIED COMPLAINT** |

Plaintiff 54 DYER LP ("**54 Dyer**"), through undersigned counsel, brings this Verified Complaint against defendants Adam Ambruso, Adam Ambruso as Trustee (collectively, "**Ambruso**") of the Adam Ambruso Revocable Living Trust (the "**Trust**"), Odin Group, LLC ("**Odin Group**"), and DOES 1-10, and alleges as follows:

### INTRODUCTION

1.      Plaintiff 54 Dyer made an initial $3.19 million loan to Adam Ambruso and his revocable trust to facilitate the construction and sale of a luxury mansion located at 2538 Carman Crest Drive in Hollywood Hills, CA (the "Investment Property"). Ambruso agreed to complete the work, sell the Investment Property, and pay back the loan by December 2018. However, Ambruso mismanaged the project, leading to serious construction and design defects that were very expensive to fix, and he failed to complete the project and repay the loan by the appointed time. Because of these construction and design defects, demolition and reconstruction costs and delays, and additional change orders, Ambruso kept asking 54 Dyer to advance more and more money under the loan, representing that the money was needed to salvage the project and that the Investment Property would be essentially worthless unless 54 Dyer advanced the additional funds. As result, the loan increased and increased, eventually totaling over **$14.2 million**—*an amount that exceeds the value of the property, which Ambruso unsuccessfully tried to sell earlier this year for $11.75 million*. After two and a half years of negotiations, modifications and forbearances granted by 54 Dyer, the loan matured and became fully due and payable on June 30, 2021.

2.      Since taking out the loan under the guise of building and selling the Investment Property, Ambruso conveyed title to the property from his personal trust to a limited liability company over 54 Dyer's objection and without 54 Dyer's knowledge, with the express purpose of evading his creditors. Without informing 54 Dyer, Ambruso decided to stop marketing the property for sale per the parties' agreement. He then put the Investment Property on the rental market—violating his agreement with 54 Dyer

and without 54 Dyer's required consent—advertising rent at $50,000-$85,000 per month. He then took the property off the rental market. Based on his attorney's statements, Ambruso is now using the Investment Property as his personal residence, rent-free.[1]

3.    Construction and design delays and defects also gave rise to a lawsuit against certain contractors and architects involved in the project. Ambruso told 54 Dyer his construction defect lawsuit was a valuable asset that would help repay the loan, and he assigned 54 Dyer the proceeds of the lawsuit. Because he lacked the money to pay lawyers and consultants to prosecute the case, Ambruso and his trust asked for advances from 54 Dyer to prosecute the case with alleged multi-million-dollar damages, but then failed to pay the lawyers. The law firm withdrew, leaving Ambruso, who is not a lawyer, to run the complex construction litigation *pro se*.

4.    Ambruso has proved beyond doubt that he cannot repay his overdue loan to 54 Dyer; he cannot manage the construction litigation; and his pattern of deceitful and fraudulent conduct makes him unfit to continue to sell the Investment Property and repay the loan. Additionally, Ambruso has allowed tax and mechanic's liens to attach to the Investment Property, diminishing the property's value. Ambruso also has no incentive to manage either the sale of the property or the construction defect litigation competently. And, as his attorney indicated, he currently considers the multimillion dollar home his rent-free personal residence, in violation of his past representations to 54 Dyer that the Investment Property would be put on the market and sold as soon as it was completed.

## JURISDICTION AND VENUE

5.    This Court has diversity jurisdiction under 28 U.S.C. § 1332. The amount in controversy exceeds $75,000, exclusive of interest and costs, and it lies between citizens of different states. On the plaintiff side, Plaintiff 54 Dyer LP is a limited

---

[1] When confronted after she made these statements, Ambruso's counsel was vague about the extent of his occupancy of the Investment Property.

partnership formed under the laws of the State of Colorado, with its principal place of business in Kemah, Texas. Its sole limited partner is William P. Reid, a citizen of the State of Texas. Its general partner is 54 Dyer GP, LLC, a limited liability company formed under the laws of the State of Colorado, and whose owner and managing member, William P. Reid, is a citizen of the State of Texas.

6.      On the defendants' side, defendant Adam Ambruso is a citizen of the State of California. Defendant Trust is a revocable trust formed under the laws of the State of California, whose trustee and beneficiary, Adam Ambruso, is a citizen of the State of California. Defendant Odin Group, LLC, is a limited liability company formed under the laws of the State of Wyoming, whose sole member is defendant Adam Ambruso.

7.      Thus, Plaintiff is not a citizen of the same state of any Defendant.

8.      Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because the property that is the subject of the action is situated in this District and because defendant Adam Ambruso, individually and as trustee of the Trust, resides in this District. Ambruso and the Trust have also consented to jurisdiction and venue of any court located within Los Angeles County, California.

## **PARTIES**

9.      Plaintiff 54 Dyer is a limited partnership formed under the laws of the State of Colorado with its principal place of business in Kemah, Texas.

10.      Adam Ambruso is a citizen of the State of California, believed to be currently residing at either 2538 Carman Crest Drive, Los Angeles, California 90068 and/or at 340 Hauser Boulevard, Apartment 428, Los Angeles, California 90036.

11.      The Trust is a California revocable trust whose sole trustee and beneficiary is defendant Adam Ambruso.

12.      Odin Group is a Wyoming limited liability company formed by defendant Adam Ambruso on September 19, 2018. It conducts business and owns real property in the State of California, and has its headquarters at 1901 Avenue of the Stars, 2nd Floor, Los Angeles, California 90067. Odin Group can be served through its registered agent

for service of process, defendant Adam Ambruso, at 340 Hauser Blvd., Apartment 428 Los Angeles, California 90036.

13.    The true names and capacities, whether individual, corporate partnership, associate, or otherwise, of the defendants named herein as DOES 1-10, inclusive, are presently unknown to Plaintiff, who therefore sues these defendants by fictitious names. Plaintiff will amend this Complaint to state their true names and capacities when the same have been ascertained.  Plaintiff is informed and believes, and on that basis alleges, that each of these fictitiously named defendants DOES 1-10 is responsible in some manner for the acts alleged herein.

14.    Plaintiff is informed and believes, and on that basis alleges, that each of the Defendants named herein, including DOES 1-10, acted jointly, in concert, and with knowledge of the actions of each of the other Defendants; acted as the agent, servant, and representative of each and every one of the other Defendants with respect to the actions complained of herein; acted at all times within the course and scope of said agency; are the successors or predecessors of a named Defendant; and/or were owners, principals, officers, directors, members, agents, partners, operators, parent companies, affiliates, and/or subsidiaries of the other Defendants sued herein; and/or that each is equally liable for the acts alleged below.

15.    Plaintiff is informed and believes, and on that basis alleges, that each of the Defendants named herein, including DOES 1-10, were and are the alter egos of the named Defendants, and that at all times there existed and exists a unity of interest and ownership between Defendants such that any separateness between them has ceased to exist, in that the named Defendants completely controlled, dominated, managed, and operated the other Defendants to suit their convenience.  On information and belief, Defendants were, and are, operated by the named Defendants as a single economic entity, and overall elements of injustice or unfairness are present in this case, as alleged herein.    On information and belief, Defendants, among other things, were undercapitalized, failed to observe corporate formalities, and were merely façades for

the operations of each other and of the named Defendants.  In addition, Defendants' misconduct and fraud alleged herein evidences the considerable injustice and unfairness they perpetrated on Plaintiff 54 Dyer.

**FACTS**

### *The Loan Agreement*

16.     On or about May 5, 2017, 54 Dyer and defendant Adam Ambruso ("**Ambruso**"), as the trustee of the Adam Ambruso Revocable Living Trust (the "**Trust**") entered into a Loan Agreement (the "**Loan Agreement**"), whereby 54 Dyer provided an initial loan of $3,190,000 (which, together with all advances, interest and fees, including those capitalized into the principal amount, and as set forth in subsequent and amended loan documents, are collectively referred to herein as the "**Loan**") for the development and construction of a luxury residence for resale at 2538 Carman Crest Drive, Los Angeles, California 90068 (the "**Investment Property**").  *See* Exhibit A (Loan Agreement). The Trust's indebtedness under the Loan Agreement is evidenced by the Promissory Note (the "**Note**") executed by Ambruso, as trustee of the Trust in favor of 54 Dyer as beneficiary. *See* Exhibit B (Note).

17.     At the time the Loan Agreement was executed, Ambruso was living at The Pallazzo Communities, 6220 West 3rd Street, Apartment 1-204, Los Angeles, California 90036.

18.     The Trust consented to the relinquishment of the Investment Property to a receiver following an Event of Default:

> 6.2. Remedies of Lender. Upon the occurrence of any Event
> of Default, Lender [54 Dyer] may, without notice or demand
> upon Borrower [Trust], which are expressly waived by
> Borrower (except for notices and demands otherwise
> required by applicable Laws to the extent not effectively
> waived by Borrower and any notices or demands specified
> in the Loan Documents), exercise any one or more of the

following Remedies as Lender may determine:…

(5)  Lender may, either directly or through an agent or court-appointed receiver, take possession of the Collateral.

Exhibit A, Loan Agreement, at § 6.2.

19.    The purpose of the Loan Agreement was to finance the demolition of the existing structure at the Investment Property and to build a new luxury mansion on the property. From the inception of the project and lending relationship, Ambruso repeatedly represented to 54 Dyer that the Investment Property would be sold on the luxury home market immediately upon completion.

20.    Construction of the Investment Property was completed in August 2020 after significant delays, construction defects, cost overruns and other issues related to the project, which led to significant construction-related litigation, as set forth in more detail below.

21.    Although there were delays and construction defect issues that required remediation, the Investment Property is a premium three-story 5,000 square-foot compound on a landscaped ¼ acre located on a private cul-de-sac street in the Hollywood Hills.  The home includes three bedrooms, four baths, a seventy-five foot raised infinity pool, and a 2-story subterranean garage with car lifts to street level.

22.    Following completion of the construction, Ambruso selected and replaced listing agents, upon information and belief based on their track record and ability to market and sell comparable luxury homes in the Hollywood Hills.

23.    Repayment of all indebtedness under the Loan Documents is secured by a Deed of Trust with Assignment of Rents on the Property (the "**Deed of Trust**", which together with the Loan Agreement and Note, as each has been from time to time modified, amended, and amended and restated, are collectively referred to herein as the "**Loan Documents**").  *See* Exhibit C (Deed of Trust).

24.    At all times during the negotiation, drafting and execution of the Loan Documents, the Trust and Ambruso were represented by counsel (the law firm of Levy,

Small & Lallas) who drafted the Loan Documents, and 54 Dyer was not represented or advised by counsel in connection therewith.

25.     In the Deed of Trust, the Trust consented to relinquish the Investment Property to a receiver following an event of default:

B. It is mutually agreed:…

> (5) ….Upon any such default, Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, in his or her own name sue for or otherwise collect such rents, issues, and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees, upon any indebtedness secured hereby, and in such order as Beneficiary may determine. The entering upon and taking possession of said property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

Exhibit C, Deed of Trust, § B(5).

26.     In mid-2018, Ambruso's construction of the Investment Property slowed as he encountered cost overruns, and at Ambruso's request, 54 Dyer extended further credit to Ambruso and the Trust pursuant to an Amendment to Loan Agreement, Amended and Restated Promissory Note, and Amendment to Deed of Trust, each dated July 25, 2018 (the foregoing, collectively the "**First Amended Loan Documents**"). Exhibit D (Amended and Restated Promissory Note).  Pursuant to the First Amended

Loan Documents, the principal amount of the Loan was increased to $8,000,000, and as an inducement for 54 Dyer to extend further credit to complete the construction of the Investment Property, Ambruso, in his individual capacity, joined the Trust as a Borrower under the First Amended Loan Documents, thereby becoming personally liable for repayment of the indebtedness thereunder.

27.     In early 2019, Ambruso's management of the construction project led to further cost overruns. Ambruso again requested that 54 Dyer extend additional credit to complete the construction.  Once again, 54 Dyer extended additional credit to Ambruso and the Trust pursuant to a Second Amendment to Loan Agreement, Second Amended and Restated Promissory Note (the "**Second Amended Note**"), and Second Amendment to Deed of Trust, each dated January 14, 2019 (the foregoing are referred to herein collectively as the "**Second Amended Loan Documents**").  *See* Exhibit E (Second Amended and Restated Promissory Note) and Exhibit F (Second Amended Deed of Trust). Pursuant to the Second Amended Loan Documents, the principal amount of the Loan was increased from $8,000,000 to $8,500,000.

28.     At all times during the negotiation, drafting and execution of the Second Amended Loan Documents, the Trust and Ambruso were represented by counsel (again, Levy, Small & Lallas) who drafted the documents, and 54 Dyer was not represented or advised by counsel.

### *Events of Default and Forbearance Agreements*

29.     Throughout 2019, construction of the Investment Property under Ambruso was further delayed as a result of various construction defects. At Ambruso's request, 54 Dyer, Ambruso and the Trust entered into a Forbearance Agreement dated September 25, 2019 (which, as amended from time to time, is referred to herein as the "Forbearance Agreement").  *See* Exhibit G (Forbearance Agreement).  The stated purpose of the Forbearance Agreement is described in the recitals therein:

Borrower has advised Lender that Borrower has

encounfered unforeseen delays in completing, marketing and

selling the improved residential property which Lender has
encumbered under the Deed of Trust to secure its Loan (the
"Property") due primarily to construction defects for which
replacement of the general contractor and remediation have
been required and that the most reasonable course of action
under current circumstances is the orderly completion of
such construction and the successful marketing and sale of
the Property for which an additional amount of time will be
required.

Borrower has therefor requested Lender to forbear
taking action under the Loan for a limited time and to make
certain modifications to the terms of the Loan.  Lender is
willing to do so for the term and on the terms and conditions
set forth in this Agreement.

30.    In the Forbearance Agreement, Ambruso and the Trust acknowledged, among other things, that they "failed to pay the installments of interest and principal" when due and owing, the principal amount of the Loan inclusive of capitalized interest had exceeded the agreed ceiling, and that the foregoing constituted "Events of Default" under the Loan Documents.  Exhibit G, at § 1.1. For its part, 54 Dyer agreed to (a) forbear from exercising its rights and remedies under the Loan Documents until the earlier of "(i) December 31, 2019, or (ii) the date on which any additional Default shall occur," (b) increase the "Maximum Principal Balance" from $8,500,000 to $10,500,000, and (c) extend the maturity date of the Loan to December 31, 2019. *Id*. at §§ 2.1, 4.4 and 4.5.

31.    As further inducement to enter into the Forbearance Agreement, the Defendants assigned to 54 Dyer all of their interests in any insurance proceeds recovered from the construction defect claims related to the construction and development of the Investment Property (the "**Construction Defect Claims**") as set

forth below and described *infra* in greater detail:

> Any insurance proceeds from insurance policies in which a third party is the insured (including without limitation the contractor, the architect and any subcontractor engaged in the construction of improvements to the Property) otherwise payable to Borrower shall be assigned and paid to Lender in reduction of the indebtedness secured by the Deed of Trust. Such payments to Lender (if any) shall be applied first to accrued interest and then to outstanding principal.

Forbearance Agreement § 4.3.

32. The forbearance period under the Forbearance Agreement was set to expire on December 31, 2019, and the parties entered into six subsequent amendments thereto increasing the Maximum Principal Balance and incrementally extending the forbearance period and maturity date through June 30, 2021. *See* <u>Exhibit H</u> (Amendments to Forbearance Agreements).

33. On July 1, 2021, the forbearance period expired and the Forbearance Agreement (as amended) expired. Thus, 54 Dyer is entitled to exercise of its rights and remedies under the Loan Documents on account of the numerous Events of Default that have occurred.

34. The balance of the Loan, as of November 29, 2021, is not less than $14,212,183.42 (which, together with legal fees and other expenses to which 54 Dyer is entitled under the Loan Documents, is referred to herein as the "**Loan Indebtedness**").

### *<u>Ambruso Transfers the Investment Property to Odin Group</u>*

35. In January 2019, Ambruso's lawyer raised with 54 Dyer the issue of transferring ownership of the Investment Property to a company called Odin Group, LLC ("**Odin Group**").

36.     Ambruso's lawyer told 54 Dyer that the purpose of this maneuver was to render 54 Dyer a secured creditor of Odin Group, require 54 Dyer to seek payment first from Odin Group and secondarily from Ambruso, and protect Ambruso personally from the claims of other unsecured creditors.

37.     The Deed of Trust contains the customary consent right of the mortgagee over the transfer of title:

> If Trustor shall sell, convey, hypothecate or otherwise
> alienate or transfer the property herein described (the
> "Property"), or any part thereof or any interest therein, or
> shall be divested of his title or any interest therein in any
> manner or way, whether voluntarily or involuntarily,
> ***without the written consent of Beneficiary being first had***
> ***and obtained***, Beneficiary shall have the right, at its option,
> to declare any indebtedness or obligations secured hereby,
> irrespective of the maturity date specified in any Note
> evidencing the same, immediately due and payable[.]

Deed of Trust (Addendum § 3).

38.     Unsurprisingly, 54 Dyer did not agree to Ambruso's proposal orally, in writing or otherwise.

39.     Recently, 54 Dyer found out that—in spite of 54 Dyer's refusal and without its knowledge or consent—Ambruso proceeded to undertake the first step of this transaction by transferring title to the Investment Property without consideration to Odin Group.

40.     On December 21, 2019, ten days before the expiration of the initial Forbearance Agreement, Ambruso executed a "Trust Transfer Grant Deed" (the "**Odin Deed**") purporting to transfer title to the Investment Property from the Trust to Odin Group, an affiliate of Ambruso.  He did not tell 54 Dyer or its principal, William Reid, that he transferred ownership of the house. *See* Exhibit I (Odin Deed).

41.     On January 13, 2020, after the forbearance period was extended through March 2020 under the first amended Forbearance Agreement, Ambruso, on behalf of Odin Group, filed the Odin Deed in the Official Records of the Recorder's Office in Los Angeles County, California as Document: 202046022.  *Id.*

42.     Ambruso is listed as the "Owner and CEO" on Odin Group's Certificate of Reinstatement with the Wyoming Secretary of State.  *See* Exhibit J (Odin Group Certificate of Reinstatement).

43.     In March 2020, 54 Dyer learned through a third party that Ambruso had executed an agreement with a real estate broker for the sale of the Investment Property listing Odin Group as the seller.  Unaware as to why Odin Group would be listed as seller, Mr. Reid asked Ambruso: "[p]lease advise intentions on loan and advise details of Odin Group LLC and where Odin Group LLC fits in with the property."  Ambruso responded that "[t]he loan is still as it is. Let's keep it going until we sell the house I guess . . . My intentions are to pay back the loan when we sell the house, as has always been the plan. Odin Group LLC is synonymous with Adam Ambruso trust, no differences there on my end. Just tell me what you need and I'll make it happen. You're the boss."  *See* Exhibit K (March 30, 2020 Email).

44.     As is evident from his email, Ambruso concealed from 54 Dyer that the Investment Property had been transferred to Odin Group and reassured 54 Dyer that the status quo remained as did his intentions to repay the Loan.   54 Dyer relied on Ambruso's misrepresentations to its detriment and entered into multiple subsequent Forbearance Agreements believing that the Loan remained, "as it is."

45.     54 Dyer retained counsel in the summer of 2021. Lien searches of the Investment Property uncovered the Odin Deed (in addition to a host of other tax liens and a mechanic's lien).  Upon learning of the Odin Deed, on September 14, 2021, 54 Dyer sent a letter to Ambruso declaring an Event of Default under the Loan Documents arising from the fraudulent transfer of the title to the Investment Property to the Odin Group.  *See* Exhibit L (September 14, 2021 Letter).

46.     Undeterred by the terms of Deed of Trust that his own counsel drafted, Ambruso explained through his latest attorney by letter dated October 8, 2021 to 54 Dyer, that he had intended to transfer the Odin Deed in order to fraudulently place the Investment Property outside the reach of "non-mortgage creditors":

> With regard to the transfer of the Property from the Trust to the Odin Group, Mr. Reid was well aware early on of the fact that **the transfer was effected for the sole purpose of protecting the Property from non-mortgage creditors since Odin is an LLC solely owned and controlled by Mr. Ambruso**. There is nothing fraudulent or secretive about the transfer. The allegation that the transfer was fraudulent is absurd.

See <u>Exhibit M</u> (Ambruso counsel letter dated October 8, 2021).  This admission by Ambruso's attorney demonstrates that the purpose of the transfer was to hinder, delay and/or defraud creditors of the Trust and Ambruso.

47.     Contrary to the assertion of Ambruso's counsel, 54 Dyer had not learned of the existence of the Odin Deed until the lien searches uncovered the same. The assertion that this transfer would somehow have no impact on the Deed of Trust, the value of the Loan it secures, or 54 Dyer's recovery on the Loan is false and without basis. By transferring the Investment Property to Odin Group, Ambruso at a minimum delayed and hindered 54 Dyer.

48.     Ambruso has a proven record of fraudulent conduct towards his creditors, including 54 Dyer, and has willingly demonstrated through his counsel that he believes such actions are appropriate and without consequence.

### *<u>Unpaid Taxes and Mechanic's Liens</u>*

49.     After 54 Dyer retained counsel in the summer of 2021, lien searches (dated August 16, 2021) of the Investment Property uncovered the Odin Deed. 54 Dyer for the first time learned of its existence.

50.   A property tax payment inquiry also uncovered mounting defaulted property taxes against the Investment Property as far back as 2019 with a redemption amount of $47,588.73.  Farfel Declaration, at Exhibit E.

51.   In addition, a lien search revealed the existence of a mechanic's lien filed by Broadway Air Conditioning and Heating in the amount of $11,190, bringing the total tax and mechanic's liens and claims against the Investment Property to $58,778.73.

### *The Construction Defect Claims*

52.   In the course of constructing the Investment Property, the general contractor, subcontractors and architect allegedly performed defective work that gave rise to actionable construction defect claims on behalf of the Trust (the "**Construction Defect Claims**"). However, Ambruso and the Trust represented to 54 Dyer that they lacked the funds to prosecute them.

53.   To protect its interest in the assigned rights to all insurance proceeds from the construction defect claims, 54 Dyer agreed, based on Ambruso's representations, to advance Ambruso additional funds under the Loan Documents to retain counsel and other insurance claim and construction defect specialists.  In total, between June 13, 2020 and April 5, 2021, 54 Dyer advanced $314,230.71 to such counsel and specialists on behalf of Ambruso and the Trust.

54.   Ambruso retained the law firm of Levy, Small & Lallas ("**LSL**") as counsel to handle the Construction Defect Claims. LSL is the same law firm that employs the attorneys who represented Ambruso and the Trust in negotiating and drafting the Loan Documentation, Forbearance Agreement and all amendments. Ambruso represented to 54 Dyer that LSL had the experience and expertise to prosecute the construction defect claims competently and vigorously.

55.   On August 28, 2020, Ambruso commenced an action by filing a complaint in the Superior Court of California, County of Los Angeles Case Number 20STCV3288 (the "**Construction Defect Action**") against the general contractor and various subcontractors. *See* Exhibit N.

56.     After commencement of the Construction Defect Action, Ambruso failed to cooperate with certain of the advisors that had been retained. In addition, Ambruso failed to pay the invoices issued by LSL, some of which 54 Dyer paid on Ambruso's behalf as additional advances under the Loan Documents. Given Ambruso's past due legal bills, it appears that LSL did not vigorously prosecute the Construction Defect Action and frustrated the efforts of the insurance claim and construction defect advisors to advance the case by stymieing communications and instead focusing its efforts on collecting payment on LSL invoices. On information and belief, the LSL team stalled its substantive legal work on the Construction Defect Action while the other professional advisors (compensated on a contingency basis) attempted to advance and settle the case.

57.     54 Dyer learned of the friction from Ambruso and LSL when they sought to bind 54 Dyer to an obligation to pay all then existing and future past due legal bills from LSL. After paying two of the past due invoices, it became clear to 54 Dyer that Ambruso and LSL were not advancing the Construction Defect Action and that the team of professionals was in a state of confusion and disarray.  Indeed, the insurance claim advisor negotiating directly with the opposing insurance providers threatened multiple times to withdraw unless LSL corrected course.  Instead of prosecuting the case on behalf of Ambruso and the Trust, LSL filed a lawsuit against 54 Dyer and Mr. Reid to collect Ambruso's outstanding legal bills, claiming, among other things, that Mr. Reid orally agreed to pay Ambruso's past-due legal bills.

58.     On November 8, 2021, LSL filed a notice of substitution of counsel in the Construction Defect Action withdrawing as counsel of record and leaving Ambruso to represent himself, *pro se*.  *See* Exhibit O.  Notwithstanding the assignment of the proceeds of the Construction Defect Action to 54 Dyer, Ambruso did not communicate to 54 Dyer any information regarding LSL's withdrawal as counsel or Ambruso's plans to prosecute the Construction Defect Action or other Construction Defect Claims.  54 Dyer only learned about LSL's withdrawal as counsel and Ambruso's *pro se*

representation after LSL sued 54 Dyer for Ambruso's failure to pay his own legal expenses. As of the date of this Complaint, Ambruso remains *pro se* in the Construction Defect Action and it is unknown whether Ambruso has retained substitute counsel, or on what terms.

59.     Ambruso and LSL have imperiled the viability and success of the Construction Defect Claims and Construction Defect Action and diminished the value of the Construction Defect Action—which Ambruso and his agents have represented are valuable assets and a potentially significant source of recovery on the Loan. Ambruso is unfit and ill-equipped to prosecute such claims or even preserve them for 54 Dyer's benefit.

### Attempts to Sell the Investment Property

60.     Between September 2, 2020 and October 7, 2020, Ambruso listed the Investment Property for sale for $15,000,000. A newspaper feature on the house ran in the Los Angeles Times.  *See* Exhibit P (*L.A. Times* article titled "Actor-Developer Adam Ambruso Asks $15 Million for Hollywood Hills Showplace").

61.     Upon information and belief, neither Ambruso nor his realtor received any serious officers. On October 7, 2020, he reduced the sale price to $11,750,000. *See* Exhibit Q (screenshot of Price & Tax History on Realtor.Com listing). Between August 18 and September 20, 2021, Ambruso listed the Investment Property on Zillow for sale at $11,750,000. *Id.* Upon information and belief, neither Ambruso nor his realtor received any serious offers, and on September 20 Ambruso removed the listing.

### Attempts at Commercial Resolution

62.     To avoid the costs to all parties of litigation and, ultimately, the necessity for this receivership proceeding, 54 Dyer at its own expense drafted a deed-in-lieu of foreclosure agreement and assignment to 54 Dyer of all rights in the Construction Defect Action and offered this consensual avenue of resolution to Ambruso.  However, after stringing 54 Dyer along with representations that he was seriously considering signing the agreement, Ambruso refused the offer and left 54 Dyer with no alternative

but to exercise its rights and remedies under the Loan Documents, including prosecuting its fraud and related claims and seeking the appointment of a receiver to preserve the value of the Investment Property and Construction Defect Claims.

### ***Ambruso Attempts to Rent the Investment Property Without Permission***

63.     In October 2021, 54 Dyer learned through online searches that Ambruso had listed the Investment Property for rent at the monthly rate of $50,000 on multiple listing websites including Apartments.com, Hotpads.com, and Zillow.com. Previously, Ambruso had listed the Investment Property at a high of $85,000 per month (on April 29, 2021).

64.     By letter dated October 19, 2021, 54 Dyer's counsel reminded Ambruso and his counsel that, pursuant to the Deed of Trust, while the multiple events of default are pending, (a) their license to "collect the rents, issues and profits" has been revoked, and (b) Ambruso and the Trust may not "execute any leases, subleases, occupancy agreements or concessions" without the express written approval of 54 Dyer.

65.     No rental proceeds from the Investment Property have been turned over to 54 Dyer as required by the Loan Documents.  Despite requests for information, Ambruso has not confirmed whether he has ever received any rents from the property, whether through short-term rentals (like AirBnB or VRBO).

66.     Notwithstanding warnings and demands that he comply with the Loan Documents and the contractual obligations he agreed to Ambruso's misconduct has become more egregious. On November 3, 2021, Ambruso's lawyer informed 54 Dyer that Ambruso now considers the Investment Property to be his personal residence. Exhibit R (Correspondence dated November 12, 2021).

67.     Ambruso is not, nor was he ever, permitted to live at the Investment Property, and 54 Dyer has not consented to Ambruso living at the Investment Property, rent free or otherwise.

68.     By letter dated November 12, 2021, counsel to 54 Dyer informed Ambruso that it was not aware of the existence of any lease between the Trust or Odin Group (the

purported owner) as lessor on the one hand, and Ambruso, as lessee, on the other hand. Ambruso was further reminded that under the Deed of Trust no such lease may exist without 54 Dyer's express written consent.

69.    The listings of the Investment Property on the rental sites were converted from active to inactive on November 3, 2021, the date of Ambruso's counsel's last letter to 54 Dyer's counsel.

70.    Apparently, Mr. Ambruso believes he can act in contravention of his contractual obligations under the Loan Documents until he gets caught red handed by 54 Dyer. These are not acts by an honest borrower, and they show the level of deceit necessitating the appointment of a receiver. Simply put, Ambruso cannot be trusted to act in the best interest of the Investment Property or Construction Defect Action.

## FIRST CAUSE OF ACTION
### BREACH OF CONTRACT - LOAN
**(Ambruso, Trust, Odin Group)**

71.    54 Dyer incorporates by reference the allegations in paragraphs 1 through 70 above, as though fully set forth herein.

72.    The Loan Documents and Forbearance Agreements are valid and enforceable contracts supported by adequate, mutual consideration.

73.    54 Dyer has performed each and every one of its material obligations under the Loan Documents and Forbearance Agreements, except for any obligations that have been excused as a result of Defendants' breach.

74.    Defendants committed multiple material breaches of each of the Loan Documents and Forbearance Agreements and are in default under those agreements, as alleged in more detail above.

75.    Defendants' material breaches of the Loan Documents and Forbearance Agreements have not been excused or waived by 54 Dyer.

76.    Under the various Loan Documents and Forbearance Agreements, and as memorialized in the Sixth Amended Forbearance Agreement, Ambruso and the Trust

owe principal as of April 6, 2021 of not less than $12,052,879.02, plus accrued interest through November 29, 2021 of not less than $2,159,304.40, for a total due and owing as of November 29, 2021 of not less than $14,212,183.42.  All amounts outstanding under the Loan Documents and Forbearance Agreements are continuing to accrue interest at no less than 10% until paid in full.

77.    Ambruso and the Trust have not paid these outstanding amounts, despite numerous demands for payment.

78.    54 Dyer has been damaged by Defendants' breaches of contract in an amount to be determined at trial, including but not limited to: the Loan Indebtedness as of November 29, 2021 of no less than $14,212,183.42; plus interest until paid of 10% per annum; plus reasonable attorneys' fees, consultant fees, expert fees and costs for bringing this action; plus the cost of pursuing any insurance providers; plus any other amounts determined by the Receiver to be due and owing to 54 Dyer.

79.    As set forth in this Complaint in more detail and as fraudulent transferee of the Investment Property, Odin Group, as alter ego of Ambruso and the Trust, is liable for all breaches, damages, debts and obligations of Ambruso and the Trust.

## SECOND CAUSE OF ACTION

### FRAUD IN THE INDUCEMENT

### (Ambruso, Trust, Odin Group)

80.    54 Dyer incorporates by reference the allegations in paragraphs 1 through 79 above, as though fully set forth herein.

81.    As set forth in this Complaint in greater detail, Ambruso and the Trust induced 54 Dyer to extend a loan, to advance additional amounts under the loan, and to forbear from exercising 54 Dyer's rights under the Loan Documents and Forbearance Agreements through numerous misrepresentations, including but not limited to the following:

a. In December 2019 and January 2020, Ambruso and the Trust represented to 54 Dyer through communications to William Reid, an authorized agent

of 54 Dyer, that the Trust owned the Investment Property.   This representation was false.

b. Between May 2017 and October 2021, Ambruso and the Trust repeatedly represented to 54 Dyer through communications to William P. Reid, an authorized agent of 54 Dyer, that they intended to renovate and sell the Investment Property for the express purpose of selling it.  This representation was false.

c. Ambruso represented that the Investment Property would not be put on the market for rent, but would instead be put on the market and sold as soon as it was completed.  This representation was false.

d. Ambruso represented that the Investment Property would not be used as his personal residence or the residence of his family, but would instead be put on the market and sold as soon as it was completed.  This representation was false, as 54 Dyer has been informed that Ambruso is using the Investment Property as his personal residence.

e. Ambruso represented that he would competently and expeditiously hire competent designers, engineers and contractors to design and construct the Investment Property, and that he had the experience and the skills to do so.  This representation was false.

f. Ambruso represented that he would competently and expeditiously hire competent counsel to initiate and prosecute the Construction Defect Action, and that he had the experience and the skills to do so and to manage the litigation.  This representation was false.

82. Reasonably relying on these and other false representations of Ambruso and the Trust as alleged in this Complaint in greater detail, 54 Dyer entered into the Loan Documents, funded the Loan, and advanced additional amounts under the Loan Documents and Forbearance Agreements.

83. Reasonably relying on these and other false representations of Ambruso

and the Trust as alleged in this Complaint in greater detail, 54 Dyer entered into the Forbearance Agreements and agreed to forbear from exercising its contractual and other legal rights and remedies.

84.    Ambruso and the Trust knew or were reckless in not knowing that each misrepresentation was false and material.

85.    Ambruso and the Trust omitted and did not disclose to 54 Dyer that they, in fact, were wholly inexperienced to address, let alone resolve, the numerous problems afflicting the Investment Property and the Construction Defect Litigation.

86.    Ambruso and the Trust knew or were reckless in not knowing that each omission was material and made other statements made by Ambruso and the Trust misleading.

87.    Ambruso and the Trust intended to induce 54 Dyer to rely on each of these materially false and material statements and omissions to persuade 54 Dyer to enter into the Loan Documents and Forbearance Agreements, to fund the loan and additional advances, and to forbear from exercising 54 Dyer's rights in light of the numerous defaults alleged above.

88.    54 Dyer reasonably relied on each of the false representations and omissions of Ambruso and the Trust and did not know the statements made by them were untrue.

89.    Plaintiffs would not have entered into the Loan Documents and Forbearance Agreements, or invested time and capital into the Investment Property, had they known that any one of the statements made by Ambruso and the Trust were untrue.

90.    As a direct and proximate result of Defendants' fraudulent inducement, 54 Dyer was harmed and suffered damages in an amount to be determined at trial.

91.    Additionally, Ambruso and the Trust acted knowingly and with malice and oppression, in conscious disregard of the rights of Plaintiffs, intending at all times to harm Plaintiffs in order to benefit and enrich themselves, thereby entitling Plaintiffs to an award of exemplary and punitive damages.

92.     As set forth in this Complaint in more detail, Odin Group, as alter ego of the Trust and as fraudulent transferee of the Investment Property, is liable for all breaches, misrepresentations, damages, debts and obligations of Ambruso and the Trust.

### THIRD CAUSE OF ACTION

### BREACH OF FIDUCIARY DUTY

### (Ambruso, Trust, Odin Group)

93.     54 Dyer incorporates by reference the allegations in paragraphs 1 through 92 above, as though fully set forth herein.

94.     In addition to and apart from their obligations under the Loan Documents and Forbearance Agreements, Ambruso and the Trust assumed fiduciary duties to 54 Dyer as the managers of the design and construction of the Investment Property and as the manager of the Construction Defect Litigation.

95.     Ambruso and the Trust therefore owed a fiduciary duty to 54 Dyer to exercise their duties in good faith, avoid self-dealing, and avoid fraudulent or improper conduct.

96.     By their conduct alleged in this Complaint in more detail, Ambruso and the Trust breached their fiduciary duties to 54 Dyer.

97.     Ambruso is insolvent because, upon information and belief, (a) the value of his assets are less than the value of his liabilities to 54 Dyer; and/or (b) he is generally not paying debts as they come due.

98.     The Trust is insolvent because, upon information and belief, (a) the Trust's assets are less than the value of its liabilities to 54 Dyer; and/or (b) the Trust is generally not its paying debts as they come due.

99.     At all relevant times, 54 Dyer has been a creditor of Ambruso and the Trust.

100.    At all relevant times, the assets of the Trust and Ambruso were held in trust to satisfy the claims of 54 Dyer.

101.    Ambruso and the Trust engaged in self-dealing in which Trust assets were,

among other things and on information and belief, (a) diverted to Odin Group for *de minimis* or no consideration, and (b) diverted to become Ambruso's personal residence, and (c) used to fund Ambruso's extravagant lifestyle to the detriment of the Trust's creditors.

102. Ambruso and the Trust violated their fiduciary duties to 54 Dyer by diverting, dissipating or unduly risking Trust assets, including the Investment Property and Construction Defect Action.

103. The diversion, dissipation and risk to Trust assets has damaged 54 Dyer in an amount to be determined at trial.

104. As set forth in this Complaint in more detail, Odin Group, as alter ego of the Trust and as fraudulent transferee of the Investment Property, is liable for all breaches, misrepresentations, damages, debts and obligations of Ambruso and the Trust.

## FOURTH CAUSE OF ACTION

### FRAUDULENT TRANSFER – UVTA AND COMMON LAW

### (Odin Group)

105. 54 Dyer incorporates by reference the allegations in paragraphs 1 through 104 above, as though fully set forth herein.

106. Prior to the transfer of the Investment Property from the Trust to Odin Group, 54 Dyer was a creditor of both Ambruso and the Trust.

107. On or about November 26, 2019, the Trust transferred the Investment Property from the Trust to Odin Group through a Trust Transfer Grant Deed.

108. The transfer of the Investment Property from the Trust to Odin Group was made to a company wholly owned by Ambruso. Ambruso retained control of the Investment Property. Ambruso did not disclose the transfer of the Investment Property at the time of the transfer.

109. Ambruso and the Trust were insolvent when the transfer was made.

110. Ambruso and the Trust incurred substantial debt before the transfer.

111. The Trust received less than reasonably equivalent value for the

Investment Property from Odin Group.

112.   The Trust conveyed the Investment Property to Odin Group with the actual intent to delay, defraud or hinder creditors of Ambruso and the Trust.

113.   Ambruso, through his attorney, has admitted his intent in transferring the Investment Property to Odin Group.

114.   As a result of the transfer of the Investment Property to Odin Group, 54 Dyer has been damaged in an amount to be determined at trial.

115.   Under California's Uniform Voidable Transfer Act, California Civil Code § 3439.07(a)(1), the transfer of the Investment Property to Odin Group should be avoided to the extent necessary to satisfy 54 Dyer's claim.

116.   Under California's Uniform Voidable Transfer Act, California Civil Code § 3439.07(3)(B), a receiver should be appointed to take charge of the Investment Property.

117.   Under California's Uniform Voidable Transfer Act, California Civil Code § 3439.07(a)(2), 54 Dyer is entitled to the remedy of attachment of the Investment Property

118.   Under California common law, the transfer of the Investment Property to Odin Group should be avoided to the extent necessary to satisfy 54 Dyer's claim.

### FIFTH CAUSE OF ACTION

### AIDING AND ABETTING

### (Ambruso, Odin Group)

119.   54 Dyer incorporates by reference the allegations in paragraphs 1 through 118 above, as though fully set forth herein.

120.   The Trust transferred the Investment Property to Odin Group with actual intent to defraud, delay or hinder 54 Dyer as a creditor of Ambruso and the Trust.

121.   Ambruso and Odin Group initiated and assisted in the Trust's fraudulent transfer of the Investment Property to Odin Group.

122.   Ambruso and Odin Group are jointly liable for damages to 54 Dyer for the

fraudulent transfer in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

### CIVIL CONSPIRACY

### (Ambruso, Odin Group)

123. 54 Dyer incorporates by reference the allegations in paragraphs 1 through 122 above, as though fully set forth herein.

124. The Trust transferred the Investment Property to Odin Group with actual intent to defraud, delay or hinder 54 Dyer as a creditor of Ambruso and the Trust.

125. Ambruso and Odin Group agreed to arrange the Trust's fraudulent transfer of the Investment Property to Odin Group.

126. Ambruso and Odin Group took overt acts to assist the Trust in making a fraudulent conveyance of the Investment Property to Odin Group.

127. The fraudulent transfer of the Investment Property to Odin Group damaged 54 Dyer.

128. Ambruso and Odin Group are jointly liable for damages to 54 Dyer for the fraudulent transfer in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION

### CORPORATE WASTE

### (Ambruso, Trust, Odin Group)

129. 54 Dyer incorporates by reference the allegations in paragraphs 1 through 128 above, as though fully set forth herein.

130. By permitting Ambruso to use the Investment Property as his personal residence, rent-free, Ambruso and Odin Group have permitted an exchange so one-sided in Ambruso's favor that no businessperson of ordinary, sound judgment could conclude that Odin Group has received any consideration, much less adequate consideration.

131. By permitting Ambruso to use the Investment Property as his personal residence rent-free, Ambruso and Odin Group have squandered or given away corporate

assets.

132.   By failing to pursue the Construction Defect Action competently, vigorously and with reasonable care, Ambruso and the Trust have squandered corporate assets.

133.   By permitting LSL to withdraw as counsel from the Construction Defect Action and now pursuing such action on a *pro se* basis, Ambruso and the Trust have squandered corporate assets.

134.   To the extent Ambruso, the Trust or Odin Group are in possession of the Investment Property without adequately insuring it against casualty losses, and to the extent they are damaging and failing to maintain the Investment Property, Ambruso, the Trust and Odin Group are committing corporate waste.

135.   Ambruso, the Trust and Odin Group are liable to 54 Dyer for the value of the lost rent and wear and damage to the Investment Property for the time Ambruso used the Investment Property as his personal residence, and to the extent they have allowed the Investment Property to deteriorate or decrease in value, in an amount to be proven at trial.

136.   Ambruso, the Trust and Odin Group are liable to 54 Dyer for the diminution of value of the Construction Defect Action due to their mismanagement of the litigation, in an amount to be proven at trial.

137.   Ambruso, the Trust and Odin Group are liable to 54 Dyer for damages for corporate waste in an amount to be proven at trial.

## EIGHTH CAUSE OF ACTION

### CONSTRUCTIVE TRUST

**(Ambruso, Odin Group)**

138.   54 Dyer incorporates by reference the allegations in paragraphs 1 through 137 above, as though fully set forth herein.

139.   Since at least October 2021, 54 Dyer is informed and believes that Ambruso has been using the Investment Property as his personal residence, rent-free,

1    according to his counsel.

2        140.   Since at least November 2019, Odin Group has held title to the Investment

3    Property.

4        141.   Ambruso and Odin Group have no right to occupy, own or detain the

5    Investment Property.

6        142.   Ambruso and Odin Group have obtained the Investment Property by fraud,

7    violation of trust, or other wrongful acts.

8        143.   54 Dyer is entitled to judgment holding that the Investment Property is

9    held by Ambruso and Odin Group in trust for the benefit of 54 Dyer.

10                          **<u>NINTH CAUSE OF ACTION</u>**

11                                **UNJUST ENRICHMENT**

12                              **(Ambruso, Odin Group)**

13       144.   54 Dyer incorporates by reference the allegations in paragraphs 1 through

14   143 above, as though fully set forth herein.

15       145.   Since at least October 2021, 54 Dyer is informed and believes that

16   Ambruso has using the Investment Property, rent-free.

17       146.   The value of the Investment Property, as advertised by Ambruso or his

18   agents, is at least $50,000 per month.

19       147.   Ambruso has not paid any rent to use the Investment Property as his

20   personal residence.

21       148.   By using the Investment Property as his personal residence, Ambruso has

22   been unjustly enriched at the expense of 54 Dyer.

23       149.   Ambruso is liable to 54 Dyer for restitution and unjust enrichment in an

24   amount to be determined at trial.

25       150.   As set forth in this Complaint in greater detail, Odin Group, as alter ego of

26   the Trust and as fraudulent transferee of the Investment Property, is liable for all unjust

27   enrichment, breaches, misrepresentations, damages, debts and obligations of Ambruso

28   and the Trust.

1

## **TENTH CAUSE OF ACTION**

2

### **ALTER EGO**

3

### **(Ambruso, Trust, Odin Group)**

4   151.   54 Dyer incorporates by reference the allegations in paragraphs 1 through

5   150 above, as though fully set forth herein.

6   152.   According to documents filed with the Wyoming Secretary of State's

7   office, Ambruso is the 100 percent owning Member, Chief Executive Manager,

8   President, Chief Executive Officer, and Registered Agent of Odin Group. Ambruso paid

9   one dollar for his ownership of Odin Group.

10   153.   Odin Group's Wyoming corporate registration lapsed and had to be

11   subsequently reinstated.

12   154.   Ambruso has admitted that "Odin Group LLC is synonymous with Adam

13   Ambruso trust, no differences there on my end. Just tell me what you need and I'll make

14   it happen."

15   155.   Ambruso, the Trust and Odin Group have treated the Investment Property

16   as an asset of each. Ambruso has indicated that Odin Group is liable for the Trust's

17   debts.

18   156.   Ambruso dominates and controls the Trust and Odin Group.

19   157.   The Trust and Odin Group are managed and supervised by Ambruso.

20   158.   Odin Group was inadequately capitalized. Ambruso has used the Trust and

21   Odin Group as a mere shell, instrumentality or conduit for a single business with respect

22   to the Investment Property.

23   159.   Ambruso concealed the identity of Odin Group as transferee of the

24   Investment Property.

25   160.   Ambruso disregarded corporate formalities of Odin Group. Odin Group

26   and the Trust did not conduct business at arms'-length.

27   161.   Ambruso used Odin Group to divert assets from the Trust and to

28   manipulate ownership of the Investment Property.

162.   By virtue of interconnected ownership, business functions, business operations and management, and by their fraudulent, unfair and unjust conduct alleged in this Complaint, Ambruso, the Trust, and Odin Group have such a unity of interest and ownership that the separate personalities of Ambruso, the Trust, and Odin Group no longer exist.

163.   If Odin Group were treated as an entity separate from the Trust and Ambruso, an inequitable result would follow.

164.   Under California law, Odin Group is jointly and severally liable for all the debts and damages of Ambruso and the Trust as alleged in this Complaint.

## ELEVENTH CAUSE OF ACTION
### ATTORNEY'S FEES
**(Ambruso, Trust, Odin Group)**

165.   54 Dyer incorporates by reference the allegations in paragraphs 1 through 164 above, as though fully set forth herein.

166.   Under the Loan Documents and Forbearance Agreements, Ambruso and the Trust agreed to pay 54 Dyer all costs and expenses (including all attorney's fees and costs of suit), incurred in the collection of the Loan.

167.   Under the Deed of Trust, the Trust similarly agreed to pay all costs and expenses, including attorneys' fees, incurred by 54 Dyer to enforce its rights under the Deed of Trust.

168.   Ambruso and the Trust are liable to 54 Dyer for all costs and expenses, including all attorneys' fees, consultant and expert fees and costs, and costs of suit, incurred in this action and in collection of the Loan, in an amount to be determined at trial.

169.   As set forth in this Complaint in greater detail, Odin Group, as alter ego of the Trust and as fraudulent transferee of the Investment Property, is liable for all attorneys' fees, costs, expert and consultant fees, debts and obligations of Ambruso and the Trust.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff 54 Dyer prays for judgment against Defendants, jointly and severally, as follows:

170.   Actual damages and other monetary relief according to proof, including but not limited to the full amount of the Loan Indebtedness in an amount not less than $14,212,183.42, plus accrued and accruing interest in an amount not less than 10% per annum;

171.   For all other actual, general and special damages adequate to compensate 54 Dyer according to proof;

172.   For all costs of suit, including attorneys' fees, consultant fees, expert fees and costs;

173.   For pre-judgment and post-judgment interest;

174.   For appointment of a receiver over the Investment Property and Construction Defect Action;

175.   For judgment voiding the transfer of the Investment Property to Odin Group;

176.   For judgment declaring that the Investment Property is held by Ambruso and/or Odin Group in trust for 54 Dyer;

177.   For a complete accounting by the Receiver of Defendants' businesses, transactions, accounts, profits, liabilities, transfers of funds, and books and records;

178.   For punitive and exemplary damages according to proof; and

For such further relief in law or equity the Court deems just and proper.

Dated:  November 30, 2021

KING & SPALDING LLP

By:  */s/Michael R. Leslie*
Michael R. Leslie

Attorneys for Plaintiff
54 DYER LP

1

## **VERIFICATION**

2      I, William P. Reid, declare under penalty of perjury as follows:

3      I have personally read the foregoing Verified Complaint, and the facts set forth in

4  paragraphs 16 through 70 of the Verified Complaint are true and correct to the best of my

5  personal knowledge or upon knowledge I acquired through reviewing documents referenced

6  therein or through conversations with third parties.

7

8      Executed on November 30, 2021,

9

10                                           William P. Reid

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VERIFIED COMPLAINT