J. MICHAEL ISSA, Receiver
*missa@brileyfin.com*
GlassRatner Advisory &
Capital Group, LLC, d/b/a
B. Riley Advisory Services
19800 MacArthur, Suite 820
Irvine, CA 92612
Telephone:  (949) 407-6620
Facsimile:   (949) 279-4244

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 54 DYER LP, a Colorado Limited Partnership,<br><br>            Plaintiff,<br><br>     v.<br><br>ADAM AMBRUSO, Individually; ADAM AMBRUSO, as Trustee of the ADAM AMBRUSO REVOCABLE LIVING TRUST; ODIN GROUP, LLC; and DOES 1-10,<br><br>            Defendants. | Case No.: 2:21-CV-09306-SVW-SK<br><br>*[The Hon. Stephen V. Wilson]*<br><br>**RECEIVER'S FIRST STATUS REPORT; DECLARATION OF J. MICHAEL ISSA; EXHIBITS**<br><br>Complaint Filed: November 30, 2021<br>Receiver Appointed: March 31, 2022 |

J. MICHAEL ISSA, of GlassRatner Advisory & Capital Group, LLC, d/b/a B. Riley Advisory Services ("Receiver"), respectfully submits this status report to the Court and the parties.

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ 1

I.  EXECUTIVE SUMMARY .................................................................................. 1

II.  INTRODUCTION ................................................................................................ 1

III.  RECEIVER ACTIVITIES .................................................................................... 2

    A.  Access to and Control Over Receivership Property and Income ................................................................................................ 2

        1.  Defendants' Failure to Turn Over Access and Control ............................................................................................. 3

        2.  The Receiver Has Taken Possession of the Property and Discovered a Tenant in the Property and a Prior Undisclosed Lease ............................................. 3

        3.  The Receiver is Maintaining the Property and Has Hired Subcontractors to Repair and Clean the Property ............................................................................................ 4

        4.  The Receiver has Prepared for the Listing and Marketing of the Property, and Has Hired a Realtor to Sell the Property ................................................... 4

    B.  Accounting of Receivership Property Expenses and Assets ......................................................................................................... 5

        1.  Defendants' Withholding of Rental Proceeds from the Receivership Property ......................................... 5

        2.  Defendants' Delayed and Incomplete Turnover of Records .............................................................................................. 6

        3.  The Bank Statements Produced by Defendants So Far Demonstrate Defendants' Improper Comingling of Funds ............................................................... 6

    C.  Expenses and Fees Incurred by Receiver ....................................... 7

## I. EXECUTIVE SUMMARY

Since his appointment in this case, the Receiver has engaged in diligent efforts to take possession of and secure the Receivership Property, collect the proceeds from Defendants' undisclosed rentals of the Property, and obtain and analyze Defendants' financial records. Such efforts have been delayed by Defendants' ongoing failure to comply with the requirements set by this Court in its Order appointing the Receiver. Nevertheless, the Receiver has taken possession of the Receivership Property, repaired and cleaned the Property, interviewed and retained a realtor, is actively marketing the Property for sale, and is analyzing the (incomplete) bank statements belatedly provided by Defendants. Once a contract for sale of the Property has been obtained, the Receiver will present that contract to the Court for approval and a fair value determination. The Receiver respectfully requests more time to complete these efforts and carry out the tasks set forth in the Court's Receivership Order. Declaration of J. Michael Issa attached hereto ("Issa Decl.") ¶ 2.

## II. INTRODUCTION

By Order dated March 31, 2022 (the "Receivership Order") (ECF 56), this Court appointed J. Michael Issa as the receiver and exclusive administrator of the real property located at 2538 Carman Crest Drive, Los Angeles, California 90068 (the "Receivership Property"). The Receiver's oath and bond have been filed with the Court (ECF 57).

The Receivership Order authorizes and empowers the Receiver to perform the following services:

    a.    To preserve and manage the Receivership Property, including the proceeds from the sale of the Receivership Property;

    b.    To demand, collect and receive any and all rents, income and profits derived from the Receivership Property;

    c.    To market the Receivership Property for sale, including hiring and managing real estate brokers and escrow agents and negotiating and

1
RECEIVER'S FIRST STATUS REPORT

signing contracts; and

    d.    To take control of all property and exercise all rights pertaining to the Receivership Property, including escrow accounts, trust accounts, documents, books, records, returns, reports, litigation files, and other information pertaining to the Receivership Property.

(ECF 56, at ¶ 2, p. 3.)

To that end, the Receivership Order requires Defendants to fully cooperate with the Receiver, including by requiring Defendants to immediately:

    a.    Vacate the Receivership Property, turn over all keys, access codes and passwords necessary for the Receiver to have full access to and use of the Receivership Property;

    b.    Turn over all books, documents, and records relating to the Receivership Property;

    c.    Turn over all rental proceeds from the Receivership Property;

    d.    Turn over all records, bank statements, checks, wire transfer records and other information related to any income generated by the Receivership Property;

    e.    Comply with the injunction prohibiting any and all conduct that interferes with the Receiver's performance of his duties and responsibilities, including but not limited to (i) living in the Receivership Property or permitting others to do so; (ii) collecting, spending, or transferring any interest in or income from the Receivership Property, such as rental proceeds; and (iii) concealing documents and financial records.

(ECF 56, at ¶¶ 3, 5, pp. 3-4.)

## III.  RECEIVER ACTIVITIES

    **A.**    **Access to and Control Over Receivership Property and Income**

The Receivership Order empowers the Receiver to take control of the

Receivership Property and income, and orders Defendants to vacate the property and turn over all documentation, keys, and other access and security codes.

### 1. Defendants' Failure to Turn Over Access and Control

In violation of the Receivership Order, Defendants failed to immediately turn over all keys and other access information and passwords to the Receiver and failed to turn over possession of the Property. Although Defendants eventually provided certain access and security codes on April 5 and 7, they did not provide keys to the Property or turn over possession of the Property to the Receiver. Issa Decl., ¶ 3.

### 2. The Receiver Has Taken Possession of the Property and Discovered a Tenant in the Property and a Prior Undisclosed Lease

On April 6, 2022, the Receiver went to the Receivership Property to carry out his obligation to take control of the Receivership Property. Based on Defendants' representations to 54 Dyer LP and the Court, the Receiver understood the property was being occupied by Defendant Ambruso and his family. However, upon arrival at the Receivership Property on April 6, 2022, the Receiver found that a tenant was living there. The tenant, Anthony Farrer, was unaware of this case and the Receivership Order. Mr. Farrer cooperated with the Receiver and was therefore permitted to live at the Receivership Property through termination of his lease on May 3, 2022. Issa Decl., ¶ 4; Ex. A (Farrer lease agreement). This delayed the Receiver's ability to take possession of the Property, repair and clean the Property, and prepare it for sale. *Id.*

The Receiver also discovered, through the review of the listings on the Multiple Listing Service, that defendant Odin Group LLC had previously entered into a leasing agreement in April 2021 with Ultimate Host LLC to rent the Receivership Property for $45,000 per month. On April 26, 2022, after requests from the Receiver and counsel for 54 Dyer, Defendants' counsel produced a copy of that lease, showing the rental period was April 15 to October 31, 2021, for a total of

$315,000 in rent. Issa Decl., ¶ 5; Ex. B (Ultimate Host lease agreement). As of the date of this First Status Report to the Court, Defendants have not turned over any of the rental proceeds they received from the Property, despite repeated requests by counsel for 54 Dyer. Issa Decl., ¶ 6; Declaration of Michael R. Leslie attached to 54 Dyer's Response to Order to Show Cause ("Leslie Declaration"), ¶ 8.

### 3. The Receiver is Maintaining the Property and Has Hired Subcontractors to Repair and Clean the Property

After the Receiver obtained possession of the Property and the tenant moved out, the Receiver inspected the Property and hired subcontractors to repair and clean the Property. Issa Decl., ¶ 7. This includes hiring a plumber, gardener, pool maintenance company, locksmith, and obtaining a title report, floor plan, and appraisal. Much of the work involved efforts to repair wear and tear caused by Ambruso and his tenants and to complete unfinished projects on the pool and plumbing. The Receiver has incurred expenses in this regard through June 17, 2022 in the amount of $15,524. *Id.*; Ex. C. Moving forward, the Receiver estimates that monthly expenses to preserve and maintain the Receivership Property will amount to approximately $2,575 per month. *Id.*

### 4. The Receiver has Prepared for the Listing and Marketing of the Property, and Has Hired a Realtor to Sell the Property

The Receiver has obtained a third-party appraisal of the Receivership Property from a California Certified Appraiser. The appraisal will be used in conjunction with the assessment of any future offers obtained and in the context of a fair value determination in connection with the Court's approval of the sale of the Property. Issa Decl., ¶ 8.

The Receiver has also interviewed three licensed real estate agents, received broker's opinions of value, and selected Josh Altman, a leading real estate agent with Douglas Elliman Real Estate. The listing agreement was signed on May 27, 2022. To date there have been open houses to the public on June 5, June 12, June 19, June

22, and June 26, and those open houses are continuing. Mr. Altman has received buyer inquiries as a result of the open houses to the public. There was an open house for brokers on June 7, resulting in broker inquiries. In addition to open houses, Mr. Altman and his team continue to market the Property through their own media channels, MLS, and other listing services such as Zillow. Issa Decl., ¶ 9. As of the date of this First Status Report, the Receiver has not yet received an acceptable offer for the Property, and therefore has not yet entered into a contract for the sale of the Property. *Id.*

Additional time will be required to receive an acceptable offer, enter into a sales contract and proceed through the escrow process. Issa Decl., ¶ 10. When a contract for sale has been executed for the Receivership Property, the Receiver will seek Court approval of the sale of the Property, as required by the Receivership Order. (Dkt. 56, at ¶ 11, p. 6.) At this time, and in light of the challenges the Receiver faces as described below, the Receiver expects this process will take several months. Issa Decl., ¶ 10.

B. **Accounting of Receivership Property Expenses and Assets**

1. ***Defendants' Withholding of Rental Proceeds from the Receivership Property***

Paragraph 3 of the Receivership Order requires Defendants to turn over all rental proceeds from the short-term or long-term rental of the Receivership Property. As of the date of this First Status Report, none of the rental income (totaling over $350,000) generated by the leases with Ultimate Host LLC and Anthony Farrer has been turned over to the Receiver. Issa Decl., ¶ 6; Exhs. A, B. This is true notwithstanding the repeated efforts by 54 Dyer LP's counsel to obtain such funds and related documentation. Leslie Decl. ¶¶ 3, 7, 9; Exhs. 1-10.

The Receiver respectfully requests the Court to issue an order to show cause to Defendants regarding their failure to turn over all rental proceeds received from the Property, as required by the Court's March 31, 2022 Receivership Order.

### 2. Defendants' Delayed and Incomplete Turnover of Records

Defendants have resisted turning over bank records despite repeated requests. Defendants' counsel produced the bank statements over many weeks for the accounts held by Ambruso and Odin Group at Bank of America. That production has been partial, sporadic, and incomplete, and was made only after repeated requests and follow-ups by 54 Dyer's counsel. Leslie Decl. at ¶ 9; Exhs. 6, 7, 8, 9. Even so, Defendants have still not produced all of the relevant bank statements. For example, Odin Group has still not produced bank statements for the 2021 time period, despite an explicit request by 54 Dyer on June 14, 2022. Leslie Decl. at ¶ 9; Exh. 10. Moreover, many other records pertaining to the Receivership Property and the use of the proceeds of 54 Dyer's loan have still not been produced. Issa Declaration, at ¶ 11. In the Receiver's experience, there are likely many invoices, check copies, draw requests, change orders, correspondence and other materials in Defendants' possession relating to the Receivership Property, and few of these documents have been produced so far. *Id.* The Receiver will need a complete set of these materials to properly evaluate the Property and issues related to the foundation, electrical, heating and other systems in the Receivership Property. *Id.*

The Receiver respectfully requests the Court to issue an order to show cause to Defendants regarding their failure to turn over all books, records and documents pertaining to the Receivership Property, as required by the Court's March 31, 2022 Receivership Order.

### 3. The Bank Statements Produced by Defendants So Far Demonstrate Defendants' Comingling of Funds

The records that the Receiver has received to date, which are still incomplete, reflect that Defendants Ambruso and Odin Group LLC have comingled the funds loaned by 54 Dyer LP. The records reflect, for example, that the funds loaned by 54 Dyer to Ambruso have been (1) commingled with Ambruso's personal income and expenses; (2) transferred back and forth between Ambruso and Odin Group LLC;

and (3) used to pay Ambruso's personal expenses. Issa Decl., at ¶ 12. The Receiver needs all of the bank statements for each Defendant, together with all associated financial records, construction records, loan disbursements, draw requests, change orders, and the like in order to carry out his duties and do a proper accounting of the use of 54 Dyer's loan proceeds. *Id.*

The Receiver respectfully requests the Court to issue an order to show cause to Defendants regarding their failure to turn over all books, records, documents and bank statements pertaining to the Receivership Property, as required by the Court's March 31, 2022 Receivership Order.

### C. Expenses and Fees Incurred by Receiver

As of May 31, 2022, the Receiver has incurred $54,083.60 in fees and expenses. Issa Decl., ¶ 14; Ex. D (May 10, 2022 Invoice #59234); Ex. E (June 21, 2022 Invoice #59431). From April 2022 through June 17, 2022, the Receiver has advanced an additional $15,524.00 in expenses. Moving forward, the Receiver estimates that monthly expenses to preserve and maintain the Receivership Property will amount to approximately $2,575 per month. Issa Decl., ¶ 14; Ex. C.

The Receivership Property is not generating any income. As discussed above, Defendants have not turned over any of the approximately $350,000 in rental proceeds Defendants have received under the two leases discovered so far. Pursuant to paragraphs 17 and 18 of the Receivership Order, the Receiver is entitled to seek a loan for payment of its fees and expenses from and with the approval of lender 54 Dyer LP, without further order of the Court. The Receivership Order also provides in these paragraphs that any payments made by 54 Dyer LP will take a first priority secured interest and will be evidenced by a Certificate of Indebtedness at 10% per annum, to be paid back out of the proceeds of the sale of the Property. The Receiver has requested a loan under these conditions from 54 Dyer. The Receiver and 54 Dyer have prepared and executed a Certificate of Indebtedness in compliance with paragraphs 17 and 18 of the Receivership Order for a loan in the total amount of

$77,332.60. Issa Decl., ¶ 15; Ex. F. The funds under this loan have been wired to the Receiver to pay the Receiver's invoices set forth above, the Receiver's expenses incurred through June 17, 2022, and three months of anticipated expenses for the Receiver. *Id.*

Respectfully Submitted,

DATED: July 15, 2022          By: /s/ J. Michael Issa
                                  J. Michael Issa,
                                  Receiver

8
RECEIVER'S FIRST STATUS REPORT