J. MICHAEL ISSA, Receiver
*missa@brileyfin.com*
GlassRatner Advisory &
Capital Group, LLC, d/b/a
B. Riley Advisory Services
19800 MacArthur, Suite 820
Irvine, CA 92612
Telephone:   (949) 407-6620
Facsimile:    (949) 279-4244

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 54 DYER LP, a Colorado Limited Partnership,<br><br>                    Plaintiff,<br><br>          v.<br><br>ADAM AMBRUSO, Individually; ADAM AMBRUSO, as Trustee of the ADAM AMBRUSO REVOCABLE LIVING TRUST; ODIN GROUP, LLC; and DOES 1-10,<br><br>                    Defendants. | Case No.: 2:21-CV-09306-SVW-SK<br><br>*[The Hon. Stephen V. Wilson]*<br><br>**DECLARATION OF J. MICHAEL ISSA IN SUPPORT OF RECEIVER'S FIRST STATUS REPORT; EXHIBITS**<br><br>Complaint Filed: November 30, 2021<br>Receiver Appointed: March 31, 2022 |

I, J. Michael Issa, acting on behalf of the receivership estate in my capacity as Receiver under the Court's March 31, 2022 Order Appointing a Permanent Receiver (the "Receivership Order"), have personal knowledge of the matters set forth below and declare as follows:

1. Pursuant to this Court's Receivership Order dated March 31, 2022, I am the Court-appointed receiver in this matter (the "Receiver").

2. Since my appointment in this case, the Receiver has engaged in diligent efforts to take possession of and secure the Receivership Property, collect the proceeds from Defendants' rentals of the Property, and obtain and analyze Defendants' financial records. Such efforts have been delayed by Defendants' ongoing failure to comply with the requirements set by this Court in its Order appointing the Receiver. Nevertheless, the Receiver has taken possession of the Receivership Property, repaired and cleaned the Property, interviewed and retained a realtor, is actively marketing the Property for sale, and is analyzing the (incomplete) bank statements belatedly provided by Defendants. Once a contract for sale of the Property has been obtained, the Receiver will present that contract to the Court for approval and a fair value determination. The Receiver respectfully requests more time to complete these efforts and carry out the tasks set forth in the Court's Receivership Order.

3. Defendants failed to immediately turn over all keys and other access information and passwords to the Receiver and failed to immediately turn over possession of the Property. Although Defendants eventually provided certain access and security codes on April 5 and 7, they did not provide keys to the Property or turn over possession of the Property to the Receiver.

4. On April 6, 2022, at 10:30 am, I went to the Receivership Property with a locksmith and a security officer to obtain access to and control of the Receivership Property pursuant to the Receivership Order. At that time, my understanding based on the representations made by Defendants was that the Receivership Property was

either vacant or Mr. Ambruso and his family resided there. However, a man named Anthony Farrer was residing at the Receivership Property as of April 6, 2022. During this initial visit, the locks on the Property were changed and photographs of the premises were taken during a walkthrough and inspection. The Receiver also obtained various details of the undisclosed tenancy, including the remaining term, rental payment, and security deposit.  Mr. Farrer and Mr. Ambruso had executed a lease on March 14, 2022 for the dates of March 14 to May 3, 2022, and Mr. Farrer pre-paid Defendant Odin Group LLC a total of $103,116.33 by wire transfer, including the security deposit.  I spoke with Mr. Farrer and an associate of his, and upon reviewing Mr. Farrer's lease agreement and financial wire transfer documentation documenting his payment of pre-paid rent to Defendants, I agreed with Mr. Farrer that he could stay through the termination of his lease on May 3, 2022.  Attached as Exhibit A is a true and correct copy of relevant portions of the lease Mr. Farrer provided to me. The tenant's rental has now expired, and the tenant has now vacated the property timely according to the terms of the rental agreement. As a result of this undisclosed tenancy, the ensuing tasks and duties of the Receiver took longer.

5.      I subsequently learned through review of the Multiple Listing Service records for the Receivership Property that in April 2021, defendant Odin Group LLC had entered into a leasing agreement with Ultimate Host LLC to rent the Receivership Property for $45,000 per month from April 15 to October 31, 2021, for a total of $315,000. Attached as Exhibit B is a true and correct copy of relevant portions of the Ultimate Host lease agreement.

6.      As of the date of this Declaration, Defendants have not turned over to the Receiver any rental proceeds under either of these leases.

7.      After the Receiver obtained possession of the Property and the tenant moved out, the Receiver inspected the Property and hired subcontractors to repair and clean the Property.  This includes hiring a plumber, gardener, pool maintenance

company, locksmith, and obtaining a title report, floor plan, and appraisal. Much of the work involved efforts to repair wear and tear caused by Ambruso and his tenants and to complete unfinished projects on the pool and plumbing. The Receiver has incurred expenses in this regard through June 17, 2022 in the amount of $15,524.  A true and correct copy of a schedule setting forth these expenses is attached as Ex. C. Moving forward, the Receiver estimates that monthly expenses to preserve and maintain the Receivership Property will amount to approximately $2,575 per month.

8.     The Receiver has obtained a third-party appraisal of the Receivership Property from a California Certified Appraiser.  The appraisal will be used in conjunction with the assessment of any future offers obtained and in the context of a fair value determination in connection with the Court's approval of the sale of the Property.

9.     The Receiver has also interviewed three licensed real estate agents, received broker's opinions of value, and selected Josh Altman, a leading real estate agent with Douglas Elliman Real Estate. The listing agreement was signed on May 27, 2022. To date there have been open houses to the public on June 5, June 12, June 19, June 22, and June 26, and those open houses are continuing.  Mr. Altman has received buyer inquiries as a result of the open houses to the public. There was an open house for brokers on June 7, resulting in broker inquiries.  In addition to open houses, Mr. Altman and his team continue to market the Property through their own media channels, MLS, and other listing services such as Zillow.  As of the date of this First Status Report, the Receiver has not yet received an acceptable offer for the Property, and therefore has not yet entered into a contract for the sale of the Property.

10.     Additional time will be required to receive an acceptable offer, enter into a sales contract and proceed through the escrow process. When a contract for sale has been executed for the Receivership Property, the Receiver will seek Court approval of the sale of the Property, as required by the Receivership Order.  At this time, and in light of the challenges the Receiver faces as described below, the

Receiver expects this process to take several months.

11.     Defendants have resisted turning over bank records despite repeated requests. Defendants' counsel produced over many weeks the bank statements for the accounts held by Ambruso and Odin Group at Bank of America.  That production has been partial, sporadic, and incomplete, and was made only after repeated requests and follow-ups by 54 Dyer's counsel. Even so, Defendants have still not produced all of the relevant bank statements.  For example, Odin Group has still not produced bank statements for the 2021 time period, despite an explicit request by 54 Dyer on June 14, 2022. Moreover, many other records pertaining to the Receivership Property and the use of the proceeds of 54 Dyer's loan have still not been produced. In the Receiver's experience, there are likely many invoices, check copies, draw requests, change orders, correspondence and other materials in Defendants' possession relating to the Receivership Property, and few of these documents have been produced so far.  The Receiver will need a complete set of these materials to properly evaluate the Property and issues related to the foundation, electrical, heating and other systems in the Receivership Property.

12.     The records that the Receiver has received to date, which are still incomplete, reflect that Defendants Ambruso and Odin Group LLC have comingled the funds loaned by 54 Dyer LP. The records reflect, for example, that the funds loaned by 54 Dyer to Ambruso have been (1) commingled with Ambruso's personal income and expenses; (2) transferred back and forth between Ambruso and Odin Group LLC; and (3) used to pay Ambruso's personal expenses.  The Receiver needs all of the bank statements for each Defendant, together with all associated financial records, construction records, loan disbursements, draw requests, change orders, and the like in order to carry out his duties and do a proper accounting of the use of 54 Dyer's loan proceeds.

13.     Under paragraph 12 of the Receivership Order, the Receiver is entitled to charge an hourly rate of $575 for services. The Receiver is also entitled to use the

services of personnel employed by GlassRatner Advisory & Capital Group, LLC, d/b/a/ B.Riley Advisory Services ("B.Riley") to assist me in the discharge of my duties at their standard hourly rates. The Receiver is further entitled to reimbursement for all expenses incurred in administering the receivership estate.

14.    As of May 31, 2022, the Receiver has incurred $54,083.60 in fees and expenses. True and correct copies of the Receiver's invoices are attached as Exhibit D (May 10, 2022 Invoice #59234) and Exhibit E (June 21, 2022 Invoice #59431). Moving forward, the Receiver estimates that monthly expenses to preserve and maintain the Receivership Property will amount to approximately $2,575 per month.

15.    The Receivership Property is not generating any income.  As discussed above, Defendants have not turned over any of the approximately $350,000 in rental proceeds Defendants have received under the two leases discovered so far.  Pursuant to paragraphs 17 and 18 of the Receivership Order, the Receiver is entitled to seek a loan for payment of its fees and expenses from and with the approval of lender 54 Dyer LP, without further order of the Court. The Receivership Order also provides in these paragraphs that any payments made by 54 Dyer LP will take a first priority secured interest and will be evidenced by a Certificate of Indebtedness at 10% per annum, to be paid back out of the proceeds of the sale of the Property.  The Receiver has requested a loan under these conditions from 54 Dyer.  The Receiver and 54 Dyer have prepared and executed a Certificate of Indebtedness in compliance with paragraphs 17 and 18 of the Receivership Order for a loan in the total amount of $77,332.60.  A true and correct copy of this Certificate is attached as Exhibit F.  The funds under this loan have been wired to the Receiver to pay the Receiver's invoices and expenses set forth above, together with three months of anticipated expenses for the Receiver.

16.    In my opinion, based on my experience in similar receivership matters, and based upon my knowledge of other receivership cases, the charges set forth above are reasonable and necessary expenses of administering the assets of the

1  receivership estate.

2      I declare under penalty of perjury under the laws of the United States that the

3  foregoing is true and correct.  Executed this _15_ day of July, 2022, at Los Angeles,

4  California.

5

6

7                    J. MICHAEL ISSA

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28