1  MICHAEL R. LESLIE (SBN 126820)
2  *mleslie@kslaw.com*
   AMANDA FARFEL (SBN 288126)
3  *afarfel@kslaw.com*
   KING & SPALDING LLP
4  633 West 5th Street, Suite 1600
5  Los Angeles, CA 90071
   Telephone:  +1 213 443 4355
6  Facsimile:   +1 213 443 4310

7  THADDEUS D. WILSON (admitted pro hac vice)
8  thadwilson@kslaw.com
   JONATHAN W. JORDAN (admitted pro hac vice)
9  jjordan@kslaw.com
   KING & SPALDING LLP
10 1180 Peachtree Street, Suite 1600
   Atlanta, GA 30309
11 Telephone: (404) 572-4600
12 Facsimile: (404) 572-5100
   *Attorneys for Plaintiff*
13 *54 Dyer LP*

14            **IN THE UNITED STATES DISTRICT COURT**

15         **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

16

17 | 54 DYER LP, a Colorado Limited | Case No.: 2:21-CV-09306-SVW-SK |
18 | Partnership, | |
   | | *[The Hon. Stephen V. Wilson]* |
19 | | |
20 |            Plaintiff, | **RESPONSE OF PLAINTIFF 54** |
   |        v. | **DYER LP TO THE COURT'S JUNE** |
21 | | **17, 2022 ORDER TO SHOW CAUSE** |
   | ADAM AMBRUSO, Individually; | **[ECF 62] ; DECLARATION OF** |
22 | ADAM AMBRUSO, as Trustee of the | **MICHAEL R. LESLIE; EXHIBITS** |
   | ADAM AMBRUSO REVOCABLE | |
23 | LIVING TRUST; ODIN GROUP, LLC; | OSC Response Due: July 16, 2022 |
   | and DOES 1-10, | |
24 | | Complaint Filed: November 30, 2021 |
25 |            Defendants. | Default Entered: April 8, 2022 |
   | | Receiver Appointed: March 31, 2022 |
26

27

28

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................. 1

II.     RELEVANT BACKGROUND ............................................................. 2

III.    DEFENDANTS' FAILURE TO COOPERATE JUSTIFIES 54
        DYER'S REQUEST FOR ADDITIONAL TIME TO MOVE
        FOR ENTRY OF DEFAULT JUDGMENT ........................................... 4

        A.    Defendants' Failure to Turn Over Access and Control ................. 4

        B.    Defendants' Misrepresentations Regarding Occupancy ............... 5

        C.    Defendants' Withholding of Rental Proceeds ............................. 6

        D.    Defendants' Delayed and Incomplete Turnover of
              Records ................................................................................... 6

        E.    Defendants' Improper Comingling of Funds ............................. 7

IV.     THE RECEIVER HAS ENGAGED IN EFFORTS TO
        PRESERVE THE VALUE OF THE RECEIVERSHIP
        PROPERTY AND MARKET THE RECEIVERSHIP
        PROPERTY FOR SALE, BUT DEFENDANTS' CONDUCT
        HAS CAUSED DELAY ....................................................................... 8

V.      ADDITIONAL TIME FOR THE RECEIVER TO
        COMPLETE HIS DUTIES, REPORT TO THE COURT AND
        FOR 54 DYER TO SEEK ENTRY OF JUDGMENT IS
        NECESSARY AND APPROPRIATE ...................................................... 9

## I.     INTRODUCTION

On March 21, 2022, this Court issued its Order granting the Receivership Motion of Plaintiff 54 Dyer LP ("54 Dyer") (ECF 54).  On March 31, 2022, the Court issued its Order Granting Appointment of Permanent Receiver (the "Receivership Order") (ECF 56).  The Receiver posted the required bond, took possession of the Property, and promptly got to work, as set forth in the Receiver's First Status Report.

Because Defendants did not file any answer to the complaint as required on April 4, 2022, Plaintiff 54 Dyer requested entry of default against all Defendants on April 7, 2022 (ECF 58, 58-1).  The Clerk then entered the default of each of the Defendants on April 8, 2022 (ECF 59).  Now, after more than three months of unexplained delay—during which time Defendants have failed to properly comply with the Court's Receivership Order—Defendants have moved to set aside their default (ECF 63).[1]

On June 17, 2022—before the Receiver filed its First Status Report and before Defendants filed their Motion to Set Aside Entry of their Default—this Court issued a minute order providing that 54 Dyer should move for default judgment by July 16, 2022 or show cause why this case should remain open (ECF 62).  54 Dyer hereby responds to the Court's minute order and shows cause, as set forth below, why the case should remain open to allow the Receiver to complete his work, including selling the Receivership Property.

Dismissal is not appropriate under these circumstances, and additional time for the Receiver to carry out his mandate is necessary and appropriate.  This is particularly true where, as here, Defendants have conceded the validity of Plaintiff's breach of contract claim (ECF 51, at 10).

---

[1] As a result of Defendants' conduct in this matter, 54 Dyer plans to oppose Defendants' motion to set aside the entry of their default.

As set forth in the First Status Report of the Receiver, the Receiver has proceeded diligently to carry out his mandate to preserve and manage the Receivership Property; try to collect rents, income and profits derived from the Receivership Property; to take control over the property and related records; to market the Receivership Property for sale; and, upon Court approval, to execute a sale of the Receivership Property at the opportune time to maximize value. (*See* ECF 56, at 3-10.)  However, the Receiver's efforts have been obstructed by Defendants' undisclosed rentals of the Receivership Property (despite their representations to the contrary), failure to turn over more than $350,000 in short-term rental proceeds, and failure to comply with this Court's Receivership Order requiring Defendants immediately to turn over all records and other documents related to the Receivership Property.

Despite Defendants' obstruction and failure to cooperate, the Receiver has taken possession of the Property, repaired the Property and restored it to saleable condition, obtained an appraisal and three realtor opinions of value, interviewed realtors, and entered into a listing agreement with Altman Brothers of Douglas Elliman, who have begun marketing the property.

Since the Property may take a period of time to sell for the best fair market price, and since the Receiver is asking for the Court's assistance in compelling Defendants' compliance with the Court's Order, 54 Dyer therefore seeks an additional 180 days to permit the Receiver to carry out his mandate before 54 Dyer moves for entry of default judgment.  54 Dyer and the Receiver are amenable to setting one or more interim status conferences over that time to apprise the Court of the Receiver's ongoing efforts.

## II.    RELEVANT BACKGROUND

By its Receivership Order dated March 31, 2022, this Court appointed J. Michael Issa as the receiver and exclusive administrator of the real property described as the residential home located at 2538 Carman Crest Drive, Los Angeles,

California 90068 (the "Receivership Property") (ECF 56).  The Receiver's oath and bond have been filed with the Court (ECF 57).

The Receivership Order authorizes and empowers the Receiver to perform the following services:

    a.  To preserve and manage the Receivership Property, including the proceeds from the sale of the Receivership Property;

    b.  To demand, collect and receive any and all rents, income and profits derived from the Receivership Property;

    c.  To market the Receivership Property for sale, including hiring and managing real estate brokers and escrow agents and negotiating and signing contracts; and

    d.  To take control of all property and exercise all rights pertaining to the Receivership Property, including escrow accounts, trust accounts, documents, books, records, returns, reports, litigation files, and other information pertaining to the Receivership Property.

(ECF 56, at ¶ 2, p. 3.)

To that end, the Receivership Order requires Defendants to "fully cooperate with the Receiver," including by providing any information and documentation necessary or incidental for the Receiver to oversee the preservation, marketing, and sale of the Receivership Property, and by "providing the Receiver with all proceeds of any and all long-term or short-term rentals of, or income from, the Receivership Property." (ECF 56, at ¶ 3, p. 3.)

In addition, the Receivership Order expressly orders that "Defendants, and anyone acting under their direction,… shall immediately" (i) vacate the Receivership Property and leave the Receivership Property in fully marketable condition; (ii) turn over to the Receiver all books, documents, and records relating to the Receivership Property; (iii) turn over all keys, access codes and passwords necessary for the Receiver to have full access to and use of the Receivership Property; and (iv) turn

over all records, bank statements, checks, wire transfer records and other information related to any income generated in any way from 2014 to the present by the Receivership Property. (ECF 56, at ¶ 5, pp. 3-4.)

Each of the Defendants is also "immediately enjoined from engaging in, or performing, directly or indirectly, any of the following actions:"

a. Demanding, collecting, receiving, spending or in any way converting or using any of the proceeds of Receivership Property;

b. Living or residing in, or taking or continuing possession of, the Receivership Property, or permitting others to do so;

c. Transferring, concealing, destroying, defacing, or altering any of the instruments, documents, books, records, or any other writings, whether in hard copy or maintained electronically, relating to the Receivership Property; and

d. Interfering, in any way, with the Receiver's performance of his duties and responsibilities, and the exercise of all his powers as set forth in the Receivership Order, including the Receiver's exclusive right of access to the Receivership Property.

(ECF 56, at ¶ 9, pp. 5-6.)

## III. DEFENDANTS' FAILURE TO COOPERATE JUSTIFIES 54 DYER'S REQUEST FOR ADDITIONAL TIME TO MOVE FOR ENTRY OF DEFAULT JUDGMENT

### A.   Defendants' Failure to Turn Over Access and Control

In violation of the Receiver Order, Defendants failed to immediately turn over all keys, access information and passwords to the Receiver and failed to turnover possession of the Property.  Counsel for 54 Dyer sent emails to counsel for Defendants apprising Defendants of their obligations under the Receivership Order, including the turnover of all bank records, all documents pertaining to the property, any rental proceeds, all passcodes and alarm codes, and possession of the Property.

Declaration of Michael R. Leslie attached hereto ("Leslie Decl."), ¶ 3; Exh. 1. Although Defendants eventually provided certain access and security codes on April 5 and 7, they did not provide keys to the Property or turn over possession of the Property to the Receiver.  Leslie Decl., ¶ 3.

### B.  Defendants' Misrepresentations Regarding Occupancy

On April 6, 2022, the Receiver went to the Receivership Property to carry out his obligation to take control of the Property.  Declaration of J. Michael Issa ISO Receiver's First Report ("Issa Decl."), ¶ 4. Based on Defendants' representations to 54 Dyer LP and the Court, the Receiver understood the property was being occupied by Defendant Ambruso and his family.  *See, e.g.*, ECF 51, at p. 5 ("Defendant Adam Ambruso is presently living in the Property and maintaining it."); ECF 51-1, at pp. 1-2 ("I am presently residing at [the Property] and I consider this Property to be my personal residence. In addition to living in the Property with my family, I am maintaining the premises and landscaping in excellent condition."). In addition, on November 3, 2021, Mr. Ambruso (through his previous counsel) maintained:

> "there is currently no rental agreement or rental arrangement of any kind and for any duration (i.e., short or long term) for the Secured Property.  No tenants are or will be living in the Secured Property.  The Borrower has no plans to enter into a rental agreement or rental arrangement with any person or entity. The Secured Property is not listed on any short or long term rental website or MLS.  As you know, the Secured Property is his personal and family's residence."

*See* Ltr. from J. Greenfield to M. Leslie, November 3, 2021 (ECF 18-3, at p. 55 of 99).

On April 4, 2022, counsel for 54 Dyer again directly inquired of Defendants' counsel whether the Property was being rented and whether there were occupants at the Property.  Defendants' counsel, Steven Fink replied unequivocally, "Mr. Ambruso is living there."  Leslie Decl., ¶4; Exh. 2.  However, upon arrival at the

Receivership Property on April 6, 2022, the Receiver found that a tenant, Anthony Farrer, was living there under an undisclosed short-term lease with Defendants.  Issa Decl., ¶ 4.

### C.  Defendants' Withholding of Rental Proceeds

As the Receiver discovered when he went out to the Property and found a tenant in possession, Defendant Odin Group (the alter ego of Defendant Ambruso) had entered into a short-term lease of the Receivership Property in mid-March of 2022, for $103,116.33 for a six-week rental period (including the security deposit)—on the cusp of the Court's Receivership Order and while 54 Dyer's Motion to Appoint a Receiver was pending.  Issa Decl., ¶ 4; Exh. A (Ferrer lease agreement). The Receiver also uncovered an additional undisclosed lease dated April 2021, in which Odin Group also had entered into a prior leasing agreement with Ultimate Host LLC to rent the Receivership Property for $45,000 per month for seven months, from April 15 to October 15, for a total of $315,000.  *See* Issa Decl., ¶ 5; Exh. B (Ultimate Host lease agreement).

54 Dyer's counsel emailed Mr. Fink on April 8 and 11, 2022 to notify him of these misrepresentations, remind him of Defendants' obligations under the Receivership Order, and demand that Defendants turn over all rental proceeds to the Receiver, including all documents pertaining to these leases. Leslie Decl., ¶ 7; Exhs. 3, 4.

It was not until April 26 that Defendants' counsel provided copies of these leases to the Receiver. Leslie Decl. at ¶ 8; Exh. 5.  As of the date of this brief, not a cent of the $383,933 in rental income has been turned over by Defendants to the Receiver, as unequivocally required by the Court's Receivership Order.  Issa Decl., ¶ 6; Leslie Decl., ¶ 8.

### D.  Defendants' Delayed and Incomplete Turnover of Records

Defendants have resisted turning over bank records despite repeated requests. In spite of the Court's Order that Defendants "immediately" turn over all financial

records and bank statements pertaining to the Receivership Property, Defendants' counsel produced the bank statements over many weeks for the accounts held by Ambruso and Odin Group at Bank of America. That production has been partial, sporadic, and incomplete, and was made only after repeated requests and follow-ups by 54 Dyer's counsel. Leslie Decl., ¶ 9; Exhs. 6, 7, 8, 9. Even so, Defendants have still not produced all of the relevant bank statements. For example, Odin Group has still not produced bank statements for the 2021 time period, despite an explicit request by 54 Dyer on June 14, 2022. Leslie Decl., ¶ 9; Exh. 10. Moreover, many other records pertaining to the Receivership Property and the use of the proceeds of 54 Dyer's loan have still not been produced. Issa Decl., ¶ 11.

The Receivership Order required "immediate" compliance, not belated and partial compliance. With $10.5 million loaned by 54 Dyer for the construction of the Receivership Property (not including interest), there surely are many invoices, check copies, draw requests, change orders, correspondence and other materials in Defendants' possession relating to the Receivership Property and the use of 54 Dyer's loan funds. But few of those records have been produced. *Id.*

Given the duplicity Ambruso has shown in his representations as to whether he rented the Receivership Property, the Receiver will need a complete set of these materials for carrying out his mandate, including reviewing repairs and warranties related to the foundation, electrical, heating and other systems at the Receivership Property. Defendants should be required to turn over these additional materials to the Receiver immediately, as directed in the Receivership Order.

### E.     Defendants' Improper Comingling of Funds

The bank records that the Receiver has received to date reflect that Defendant Ambruso and Defendant Odin Group LLC have improperly comingled the funds loaned by 54 Dyer LP. The records reflect, for example, that the funds loaned by 54 Dyer to Ambruso have been (1) commingled with Ambruso's personal income and expenses; (2) transferred back and forth between Ambruso and Odin Group LLC

without 54 Dyer LP's knowledge or consent in violation of the loan agreements; and (3) used to pay Ambruso's personal expenses. Issa Decl., ¶ 12.  The Receiver needs all of the bank statements for each Defendant, together with all associated construction records, disbursements, change orders, and the like in order to carry out his duties and do a proper accounting of the use of 54 Dyer's loan proceeds.

## IV.   THE RECEIVER HAS ENGAGED IN EFFORTS TO PRESERVE THE VALUE OF THE RECEIVERSHIP PROPERTY AND MARKET THE RECEIVERSHIP PROPERTY FOR SALE, BUT DEFENDANTS' CONDUCT HAS CAUSED DELAY

As set forth in the Receiver's First Status Report, the Receiver has proceeded diligently in carrying out his mandate, but Defendants' above-described failure to comply with their obligations under the Receiver Order have caused delay.  For example, the Receiver has had to hire and supervise subcontractors to remedy "wear and tear" and problems with the Property caused by Defendants and their renters. Issa Decl., ¶¶ 2, 7.

In addition, Defendants' misrepresentations about occupancy of the Receivership Property and their withholding of rental proceeds obstructs the Receiver's ability to collect rental proceeds and identify other financial mismanagement by Defendants.  As set forth above and in the Receiver's First Report, Defendants have failed to turn over complete financial records, checks, and other documentation related to the Receivership Property, which violates the Receivership Order and presents challenges to the Receiver in carrying out his duties.

The Receiver has obtained an appraisal of the Receivership Property.  After interviewing three realtors, the Receiver hired real estate broker Josh Altman of Douglas Elliman, and Mr. Altman has listed the property and held several brokers' open houses.  Issa Decl., ¶¶ 8, 9.  The Property is currently being marketed for sale. More time will be required to receive an acceptable offer, enter into a sales contract

and proceed through the escrow process.  Issa Decl., ¶ 10. When a contract for sale has been executed for the Receivership Property, the Receiver plans to seek Court approval of the sale of the Property, as required by the Receivership Order.  (ECF 56, at ¶ 11, p. 6.)  At this time, and in light of the above-described challenges the Receiver faces, the Receiver does not expect to reach this point for several months. Issa Decl., ¶ 10.

## V.  ADDITIONAL TIME FOR THE RECEIVER TO COMPLETE HIS DUTIES, REPORT TO THE COURT AND FOR 54 DYER TO SEEK ENTRY OF JUDGMENT IS NECESSARY AND APPROPRIATE

54 Dyer cannot move for entry of default judgment until the Receiver is able to carry out his mandate.  For the above-described reasons, 54 Dyer respectfully seeks an additional 180 days for the Receiver to obtain an acceptable offer to purchase the Receivership Property, to obtain Court approval for that sale, and to close out the Receiver's duties before moving for entry of default judgment.

Respectfully submitted,

DATED:  July 15, 2022                    **KING & SPALDING LLP**


By: */s/ Michael R. Leslie*
Michael R. Leslie

Attorneys for Plaintiff
54 DYER LP